United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JOHNSON,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CYNTHIA Y. TAMPKINS,<br><br>　　　　　Defendant. | Case No. 17-cv-00385-JD<br><br>**ORDER RE PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 1 |

Petitioner Michael Johnson is a California state prisoner who seeks federal habeas relief under 28 U.S.C. § 2254(d)(1). Dkt. No. 1. He was charged with one count of forcible rape, Cal. Penal Code § 261(a)(2) (Count 1), one count of sodomy by use of force, *id.* § 286(c)(2)(A) (Count 2), two counts of forcible penetration, *id.* § 289(a)(1)(A) (Counts 3 and 4), and one count of false imprisonment, *id.* § 236 (Count 5). CT at 163-65.[1] A jury convicted Johnson on Counts 1, 3, 4, and 5, and found him guilty of misdemeanor battery, Cal. Penal Code § 242, a lesser-included offense of Count 2. Dkt. No. 1. Johnson was sentenced to a prison term of twelve years.

Johnson contends that he is entitled to habeas relief because the jury instructions on consent in Counts 1 through 4 unconstitutionally shifted the burden of proof to the defendant. Johnson did not object to the instructions at trial. On direct appeal, the California Court of Appeal rejected these arguments on the merits and affirmed the sentence. Johnson has not presented any reason to reach a different outcome here, and so the petition is denied.

**BACKGROUND**

The court of appeal provided a detailed account of the material facts and trial proceedings.

---
[1] Dkt. No. 11-5 at ECF pp. 174-76.

*People v. Johnson*, No. A142514, 2015 WL 5022882 (Cal. Ct. App. Aug. 25, 2015) (unpublished); Dkt. No. 11-3. Neither party disputes the court's statements, and they will not be presented *in toto* here.

In summary, Johnson was convicted of sexually assaulting the victim, "A.", in July 2012. Johnson and A. had started communicating with each other on the "Plenty of Fish" dating website. They met by chance at a restaurant while they were each in the company of other friends. They decided to dine together, and their friends left the restaurant before they did.

A. did not enjoy Johnson's company and decided she was not interested in him. In the restaurant parking lot, Johnson groped her and A. pushed him away. He asked for a ride home, which A. agreed to do. In the car, A. thought Johnson was acting in an agitated and "really weird" manner. *Johnson*, No. A142514, 2015 WL 5022882, at *1. She pulled over on a dimly lit street at a spot that Johnson requested. Johnson then attacked her by, among other actions, twisting her breast, grabbing her hair, and reaching under her dress to digitally penetrate her vagina and anus. He inserted his penis into her anus, which caused A. to scream in pain. Johnson jammed his fingers into her mouth to stifle the screams.

A. sought to defuse the situation by changing her demeanor and telling Johnson that she needed more room to be comfortable. Johnson stepped out of the car, and A. said she had to leave to pick up her infant daughter. She let Johnson kiss her goodbye because she was afraid. She drove to the home of a friend, who took her to a police station. The police escorted her to a hospital for a sexual assault examination. The exam revealed a "plethora" of injuries consistent with a sexual assault. *Id.* at *2. It also showed a bite mark on A.'s shoulder. A DNA swab resulted in a minor evidence profile consistent with Johnson's DNA.

A few days later, A. cooperated with the police to make a recorded call to Johnson. A. said she was not on birth control and asked if he had entered her vaginally. Johnson said he had but that he "didn't finish." *Id*. at *3. She asked why he had bitten her back and treated her roughly, and Johnson said it was because he was "just getting a little kinky." *Id*. He denied raping her.

At trial, Johnson's main defense was that the sexual contact was consensual and that A. was not a credible witness. Johnson was convicted of one count of forcible rape and two counts of

forcible sexual penetration (Counts 1, 3 and 4), each of which requires the government to prove lack of consent. The pertinent instructions, CALCRIM Nos. 1000 (forcible rape) and 1045 (sexual penetration), stated that consent means that a person "must act freely and voluntarily and know the nature of the act" and that "[e]vidence that the defendant and the [person] dated is not enough by itself to constitute consent." *Johnson*, No. A142514, 2015 WL 5022882, at *3; CT at 286-91;[2] RT at 2106-10.[3]

Johnson did not object to the jury instructions at trial. Even so, he argued on direct appeal that the instructions shifted the prosecution's burden to prove lack of consent to the defendant. The court of appeal determined that the instructions merely defined consent and properly advised the jury that a dating relationship was not sufficient in itself to establish consent, but that the jury was free to consider it as a factor with all the other evidence of consent. *Johnson*, No. A142514, 2015 WL 5022882, at *3. The court concluded that nothing in the plain language of the instructions lessened the prosecutor's burden of proof or shifted the burden to the defendant. *Id*. The California Supreme Court denied Johnson's petition for review.

## LEGAL STANDARDS

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Martinez v. Sullivan*, No. 17-CV-04436-JD, 2019 WL 1877347, at *2 (N.D. Cal. Apr. 26, 2019). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

---

[2] Dkt. No. 11-5 at ECF pp. 295-300.
[3] Dkt. No. 11-11 at ECF pp. 57-61.

3

A state court decision is "contrary to" Supreme Court authority only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409. "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under Section 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000). In conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Section 2254(d)(2) also sets "a daunting standard -- one that will be satisfied in relatively few cases. Nevertheless, the standard is not impossible to meet." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Miller-El*, 537 U.S. at 340 ("Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable").

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the Court looks to the last reasoned opinion from a lower

4

court. *See Nunnemaker*, 501 U.S. at 801-06; *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In this case the Court looks to the opinion by the California Court of Appeal for all the claims in the petition.

**DISCUSSION**

Johnson raises essentially the same jury instruction argument here that he did before the court of appeal, with the addition of a reference to the instruction for forcible sodomy in CALCRIM No. 1030. Johnson was not convicted of sodomy, *see* Dkt. No. 24 at 3 n.2, and the court of appeal did not expressly address Instruction No. 1030.

For the most part, Johnson's petition and eight-page traverse simply re-argue the evidence presented at trial about consent, and assert, without any case law support, that the dating relationship language in the instructions somehow shifted the burden of proof to him. *See* Dkt. No. 24 at 7. Johnson never mentions the court of appeal decision, let alone show how it might have been contrary to federal law or based on an unreasonable determination of the facts. In effect, his petition and traverse challenge the trial court's instructions as if the court of appeal decision never happened. That approach misapprehends the governing standards and procedures for habeas relief, and the Court's limited role in reviewing state criminal convictions.

A good argument can be made that this is enough on its own to deny the petition. Nevertheless, mainly for the sake of completeness, the Court will address the claim, even though it is not well formulated.

An independent review shows no error in the court of appeal's determination of the jury instruction issues, or that the challenged instructions denied Johnson a fair trial. To start, even though Johnson failed to object to the jury instructions at trial, the court of appeal properly reviewed his claim "on the merits." *Johnson*, No. A142514, 2015 WL 5022882, at *3 n.3. It reasonably concluded that the jury instructions "correctly informed the jury that a dating relationship is not 'sufficient' to constitute consent" but was "one piece of evidence for the jury to consider." *Id.* at *3. This did not shift the burden of proof because "[t]he jury was not precluded from considering the existence of a dating relationship between appellant and A. in resolving the issue of consent, nor was it advised to presume a lack of consent." *Id.*

There is nothing unsound in these conclusions that would warrant federal habeas relief. To obtain federal collateral relief for a jury charge, a petitioner must show that the challenged instruction so tainted the entire trial that the resulting conviction violated due process. *See Estelle v. McGuire*, 502 U.S. 62, 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instruction should not be judged in isolation, but considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at 72. Specifically, the court should evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)); *Prantil v. California*, 843 F.2d 314, 317 (9th Cir. 1988).

Johnson has not carried his burden on these showings. To the contrary, the trial record weighs heavily against a finding that his conviction violated due process or fundamental notions of justice and fairness. The jury was instructed that the prosecutor "ha[d] the burden of proving beyond a reasonable doubt that the defendant did not actually and reasonably believe that the [woman] consented," and that if the prosecutor failed to meet this burden of consent "you must find the defendant not guilty." CT at 286-91;[4] RT at 2106-10.[5] The jury also heard an abundance of evidence, including testimony from A., percipient witnesses, police officers, the nurse who conducted the sexual assault examination, photographs of A. taken after the assault, the DNA test taken from a bite mark on A.'s back, and the recorded call between A. and Johnson that was conducted with the help of a police officer the next day. *See Johnson*, No. A142514, 2015 WL 5022882, at *1-2.

Johnson also offers little in the way of case law to support of his petition. He does not argue that the standardized jury instructions used at the trial, or the penal code on which they are based, are unconstitutional. He is foreclosed in the habeas context from challenging the instructions as "allegedly incorrect under state law." *Estelle*, 502 U.S. at 71-72. While it is certainly true, as Johnson says, that due process requires a jury determine every element of a crime beyond a reasonable doubt, *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995), and that a jury

---

[4] Dkt. No. 11-5 at ECF pp. 295-300.
[5] Dkt. No. 11-11 at ECF pp. 57-61.

6

instruction may not shift the burden of proof as to one of those elements, *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979), he simply alludes to those general principles in a few short sentences, and makes no effort to show how the court of appeal's conclusions were in any way infirm under them.

Johnson's reference to *Pope v. Illinois*, 481 U.S. 497 (1987), is also misdirected. Dkt. No. 24 at 8. *Pope* involved prosecutions under an Illinois obscenity statute where the juries were instructed to evaluate obscenity in a way that was inconsistent with established federal law as determined by the Supreme Court. *Id*. at 499-500. Rather than reverse the convictions outright, the Supreme Court remanded for a determination of whether they might be "subject to salvage" under a harmless error analysis. *Id*. at 501.

How any of this applies to Johnson is left unsaid in his brief. He suggests *Pope* is "analogous" to his case, Dkt. No. 24 at 8, but does not explain why. His extraction of a snippet from a footnote in *Pope*, *id*., provides no illumination and is arguably a distortion of what the Supreme Court was addressing. *See Pope*, 481 U.S. at 503 n.7.

**CONCLUSION**

The petition is denied. A certificate of appealability is also denied. The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).

The Court may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard. *Id.* § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

7

Johnson has not shown a certificate is warranted.

**IT IS SO ORDERED.**

Dated: August 20, 2019

JAMES DONATO
United States District Judge